UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RUDY COLON, individually and on behalf of                   :
others similarly situated,                                  :
                                            Plaintiffs,     :          12 Civ. 3788 (JPO)
                                                            :
                     -against-                              :          OPINION AND ORDER
                                                            :
MAJOR PERRY STREET CORP., et al.,                           :
                                            Defendants.     :
                                                            :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Rudy Colon, individually and on behalf of all others similarly situated, alleges

that Defendants Major Perry Street Corp., Major 10th Street Realty Corp., M&E E 42 Barrow

LLC, M&E Christopher LLC, Croman Real Estate, Inc., and Croman Family Associates, LLC

("Corporate Defendants"), as well as Yesenia Camilo and Steven Croman, violated the Fair

Labor Standards Act ("FLSA") and New York state law by failing to adequately compensate

employees for hours worked in excess of forty hours per week.  Plaintiff now moves for an order

(1) approving the text of a proposed Notice of Pendency and Consent to Become a Party

Plaintiff; (2) permitting Plaintiff to circulate the Notice and Consent; (3) requiring Defendants to

provide Plaintiff with information about all superintendents, maintenance workers, and

handymen from six years preceding the filing of the complaint until today; (4) permitting all

similarly situated individuals 60 days to opt into this case; (5) tolling the statute of limitations for

all similarly situated individuals from January 7, 2013 until today; and (6) granting any other just

relief.  For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

I.      **Background**[1]

Defendant Croman owns all of the Corporate Defendants, which in turn collectively own and manage approximately 100 residential buildings in New York State.  Defendant Camilo is an employee of the Corporate Defendants and a former overseer of Plaintiff's work.  The Court will refer to all of the defendants together as "Defendants."

Plaintiff Colon lives in the Bronx and has been employed by Defendants to work at various buildings in Manhattan's West Village over the past six years.  Specifically, he worked at 110 Bedford Street, 120 Christopher Street, 118 Christopher Street, 273 W. 10th Street, 95 Perry Street, and 62 Barrow Street ("the Buildings").  From the summer of 2008 through October 2010, Colon worked for Defendants as a handyman, earning a flat rate of $600 per week.  During this period, he worked an average of two to six overtime hours per week.  Colon was "sometimes" paid for those overtime hours, but always at his regular rate of $15.00 per hour.

In October 2010, Colon was promoted to superintendent, a position he held until February 29, 2012, when he was summarily terminated.  At the time Colon was named a superintendent, Defendants agreed to pay him $26,000 per year—based on $500 per week—and to provide him with lodging at 110 Bedford Street.  As a superintendent, Colon's duties included removing garbage and recycling, cleaning the common areas and exteriors of the Buildings, repairing fixtures in apartments and in the common areas, killing rats and mice, fumigating, fixing leaks in the roofs, gardening, and other tasks.

When Colon was hired as a superintendent, Camilo advised him that the weekly schedule would be Monday through Friday, 9:00 am through 5:00 pm.  Colon, however, often "worked significantly more than [40] hours a week."  He states that he actually worked between 78.5 and

---

[1] These facts are based on the Complaint and the affidavits filed by the parties.

93 hours per week:  Monday from 7:00 am through between 12:00 am and 1:00 am; Tuesday

from 7:00 am through between 8:00 pm and 10:00 pm; Wednesday from 7:00 am through

between 7:00 pm and 11:00 pm; Thursday from 7:00 am through between 5:00pm and 7:00 pm;

Friday from 7:00 am through between 8:00 pm and 10:00 pm; Saturday from 9:00 am through

between 6:00pm and 7:00 pm; Sunday from 9:00 am through between 3:30 pm and 4:00 pm; and

additional hours due to the fact that Camilo required Colon to work during "off-hours."  When

Colon told Camilo that "[his] workload was overbearing and required [him] to work all hours of

the day and night . . . [Camilo] retorted that it was [his] work and that [he] had to get it done."

Colon adds that he "regularly complained to Defendant Camilo that I was not paid weekly and

that I was not paid for all the hours I worked," but Camilo responded that he "could look for

work elsewhere if [he] was not satisfied with [his] pay."  Colon was unable to take any

vacations, or any days off, during his tenure as a superintendent.  Nor did he receive any

additional pay for overtime hours.  To the contrary, Colon states that he was paid only $2,000 per

month, instead of $500 per week, and therefore received $2,000 less than the total amount of

$26,000 per year he had been promised by Defendants.

      To support his request for certification of this action as a collective action, Colon states in

the Complaint that "there are over 100 current and former superintendents, maintenance workers,

and workers performing similar tasks and duties that are similarly situated to the Named Plaintiff

and who have been denied minimum wage and overtime compensation while working for

defendants."[2]  The Complaint adds that Colon is representative of this group and that

---

[2] In an affidavit, Oren Goldstein, the Chief Operating Officer of Croman Real Estate, Inc.
disputes this allegation and states that "we currently employ 26 superintendents in total, and an
additional 9 maintenance workers."  He also states that the "job duties of a superintendent versus
those of a maintenance worker are wholly separate and almost never overlap," adding that "the

Defendants' common practices consist of "willfully failing and refusing to pay them the statutorily required minimum wage for all hours worked . . . [and] for hours worked in excess of forty (40) per workweek . . . [and] willfully failing to keep records required by the FLSA."

Colon's motion is also supported by declarations from two other individuals: Gabriel Ortiz and Alen Balic. They echo Colon's allegation that most of Defendants' handymen and superintendents are immigrants with limited English-language skills.

Ortiz states that he began working for Defendants as a superintendent of six buildings in Manhattan in 2004, each of which possessed between 10 to 16 apartments. His duties included replacing light bulbs, preventing and dealing with rat and mouse infestations, painting hallways, maintaining the common grounds, removing garbage and recycling, and apartment maintenance. Although he was told when hired that he would be expected to work from 9:00 am to 5:00 pm Monday through Friday, he "actually worked more than [50] hours each week performing [his] general[] maintenance responsibilities and no less than an additional [10] hours each week responding to calls from tenants." For that work, he was paid $400 per week and given lodging in one of the buildings he helped maintain. He never received additional pay for work outside his "official schedule" and, even after complaining to a supervisor about the excessive workload, was never paid for the extra overtime hours. Ortiz adds that he is "aware of other employees who worked for Croman, but [who] were not paid properly for all of the hours they worked."

Balic was hired as a superintendent by Defendants in September 2005 and was initially responsible for 10 buildings. In early 2008, several of these buildings were assigned to another superintendent. Her duties included taking out the garbage, cleaning up common areas, watering

---

superintendents (all 26 of them) manage different numbers of apartments, different numbers of buildings, and have different overall responsibilities from each other."

plants, shoveling snow, fumigating, killings rats and mice, fixing leaky roofs, and responding to
tenant complaints.  When hired, Balic was advised that she would be expected to work from 9:00
am to 5:00 pm Monday through Friday; in reality, she worked "much more than 40 hours a
week."  Indeed, she "regularly worked at least 70 hours a week," though her "weekly hours
varied depending on the tasks [she] needed to perform and the number of repairs [she] needed to
make."  She was paid $600 per week, plus lodging, but "nothing extra for the extensive overtime
hours [she] worked."  She adds that she "rarely received all of $600 because Defendant Croman
regularly deducted from [her] wages for various reasons."  Starting in 2010, Croman "started
paying [her] $2,400 at the end of each month, instead of $600 per week."  She complained to her
supervisor and to Croman "regularly about the deductions Defendant Croman took from [her]
salary, the amount of hours [she] had to work, and the fact that [she] was not paid for all of the
hours [she] worked," but "nothing ever changed."

## II.   Discussion

### A.   Standard for Conditional Certification of a Class Action Under the FLSA

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of
the minimum standard of living necessary for health, efficiency, and general well-being of
workers . . . ."  29 U .S.C. § 202(a).  "The purpose of the FLSA . . . was to 'guarantee [ ]
compensation for all work or employment engaged in by employees covered by the Act.'"  *Reich
v. N.Y. City Transit Auth.*, 45 F.3d 646, 648-49 (2d Cir. 1995) (alteration in original) (quoting
*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944)).

The FLSA requires employers to pay "any of [their] employees who in any workweek . . .
work longer than forty hours unless such employee receives compensation . . . at a rate not less
than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207 (a)(1).

In situations where two or more entities employ an individual jointly, they are jointly and severally liable for any FLSA violations.  29 C.F.R. § 791.2.

Section 216(b) provides for a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the FLSA's overtime provisions, and has its own right of collective certification, separate and apart from Rule 23:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Like Rule 23, § 216(b) provides individuals, whose claims would otherwise be prohibitively expensive to adjudicate, the "advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (noting that Congress enacted § 216(b) "[t]o encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA").  A collective action under section 216(b) is nonetheless a "fundamentally different creature than the Rule 23 class action," as the latter "does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003).

"Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are 'similarly situated' and give consent to become a party in a writing filed with the court." *Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (quoting 29 U.S.C. § 216(b)).  "The Second Circuit Court

6

of Appeals has endorsed a two-step method of certification in an opt-in collective action under

the FLSA." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 401-02 (S.D.N.Y. 2012).

"The first step involves the court making an initial determination to send notice to

potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir.

2010) (citations omitted).  This determination requires only a "modest factual showing" from

plaintiffs that "they and potential opt-in plaintiffs together were victims of a common policy or

plan that violated the law." *Id.* (quotation marks and citations omitted).  The standard at this

point is "considerably less stringent than the requirements for class certification under Rule 23."

*Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711, at *3 (E.D.N.Y.

Apr. 2, 2012).  Although "[t]he 'modest factual showing' cannot be satisfied simply by

unsupported assertions, [] it should remain a low standard of proof because the purpose of this

first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.*

(quotation marks and citations omitted) (emphasis in original); *see also Mendoza v. Casa de

Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (in

order to meet the "low bar for allegations required for collective action certification," the

plaintiff's complaint or affidavits must allege a factual nexus with other employees of the

defendant).  Accordingly, at this preliminary stage, the focus of the inquiry "is not on whether

there has been an actual violation of law but rather on whether the proposed plaintiffs are

'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has

been violated." *Guillen v. Marshalls of Mass., Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010)

(citations omitted).  As Judge Cote has observed, "[t]he test is whether there is a 'factual nexus'

between the claims of the named plaintiff and those who have chosen to opt-in to the action."

7

*Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (citation omitted).

"Because the standard at the first stage is 'fairly lenient,' courts applying it 'typically grant[ ] conditional certification.'" *Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 332, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)); *see also Raniere v. Citigroup Inc.*, No. 11 Civ. 2448, 2011 WL 5881926, at *22 (S.D.N.Y. Nov. 22, 2011) ("Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) ("Courts have recognized that it is best to authorize a collective action and then 'wait[ ] to see what the facts bear out.'" (citation omitted) (alteration in original)).  Indeed, at the notice stage, "courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001) (quotation marks and citation somitted).

"Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb.19, 2008).  "In making its determination at this first state, the Court may consider a plaintiff's affidavit and hearsay statements." *Ali v. N.Y. City Health & Hospitals Corp.*, No. 11 Civ. 6393, 2013 WL 1245543, at *2 (S.D.N.Y. Mar. 27, 2013).  Defendants, however, may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits. *See Francis v. A&E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) ("[W]hile Defendant has supplied what it calls 'undisputed store manager affidavits,' . . .

on which it also relies for the proposition that ASM duties are variable, those affidavits should be discounted at this stage."). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). Nor does a court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Id.* (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). This initial step, in other words, is *not* the place to scrutinize possible factual variations between plaintiffs. *Accord Lynch*, 491 F. Supp. 2d at 368 ("Thus, any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification."); *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("[T]he factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.").

Despite the leniency of this standard, conditional certification is not automatic. "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (internal citation and quotation marks omitted). "Conclusory allegations" are not enough to satisfy this burden. *See Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, *3 (S.D.N.Y. Feb. 2, 2006) (citation omitted); *see also Prizmic v. Armour, Inc.*, No. 05 Civ. 2053, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (declining to find employees were similarly situated where "plaintiff has not submitted *any* evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law").

"If the plaintiffs demonstrate that 'similarly situated' employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (citation omitted). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not . . . ." *Myers*, 624 F.3d at 555.

### B.   Conditional Certification is Appropriate as to a Class of Superintendants

Colon alleges that Defendants maintain a policy and practice of paying superintendants a flat salary, no matter how many hours those superintendants work, and of later failing to pay superintendants overtime where appropriate. Specifically, he alleges—and is supported in these allegations by Ortiz and Balic—that superintendants must work substantially more than 40 hours per week to satisfy the obligations imposed on them by Defendants, that they are paid a flat salary no matter how many hours they work, that they receive accommodation from Defendants during their tenure, that this policy was coordinated and implemented by Defendants' centralized management system, and that superintendants handle a broad array of apartment-related tasks that are not adequately covered by assistance from handymen.

These claims, supported by Colon's affidavit, are more than sufficient to satisfy the requirement of a "modest factual showing" that Colon and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *See Myers*, 624 F.3d at 555; *see also Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11 Civ. 5018, 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012) (certifying collective action where a security guard stated in his

10

affidavit that he and all current and former security guards were subject to a policy of non-receipt of overtime premiums); *Gani v. Guardian Serv. Indus. Inc.*, No. 10 Civ. 4433, 2011 WL 167844, at *1 (S.D.N.Y. Jan. 13, 2011) (authorizing notice where an affidavit by counsel for plaintiff and plaintiff's own affidavit stated that the plaintiff "and others . . . worked more than 40 hours per week but were not paid for their excess hours"); *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007) (finding "enough of a factual nexus" where the plaintiff and a former waiter submitted affidavits describing FLSA non-compliant tip policies and payroll practices at a restaurant).

The declarations submitted in support of Colon's motion further cement this conclusion; it is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA. *See, e.g.*, *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (conditional certification granted based on two affidavits submitted by plaintiff); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditional certification granted based on three affidavits).

Relying on an affidavit from Goldstein, Defendants assert that superintendents in different buildings were not similarly situated because they performed different tasks, adding that superintendants are required only to work 40 hour weeks and that the provision of lodging to the superintendants is meant to cover any emergency overtime. Defendants thus take the view that Plaintiff has failed adequately to allege a policy of failing to pay overtime. The cases upon which Defendants rely, however, are entirely inapposite—either factually or in light of their procedural posture. *See Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575, 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (denying certification due to lack of factual nexus where the

11

plaintiff sought conditional nationwide class certification for thousands of other employees in

830 stores operated by the defendant); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735,

2011 WL 5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (denying certification after five months of

discovery where the plaintiff could not produce evidence that other employees shared his claim

and several other employees submitted affidavits rebutting the plaintiff's statements); *Morales v.

Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) (denying

certification where the plaintiff did not submit any affidavit and an affidavit submitted by the

plaintiff's attorney did not allege any common policy or plan); *Barfield v. New York City Health

& Hospitals Corp.*, No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005)

(denying certification where the plaintiff, a nurse, submitted "nothing but limited anecdotal

hearsay to suggest that there is a widespread practice of referral nurses working in excess of 40

hours per week by signing up through multiple agencies, and no evidence whatever that this is

pursuant to a policy of either Bellevue or the NYHHC").

　　　　Further, this certification stage is not the appropriate place to litigate the sorts of factual

variations Defendants describe.  *See Iglesias-Mendoza*, 239 F.R.D. at 369 ("[T]he factual

variations defendants rely on do not undercut plaintiffs' allegations of common wage and

overtime practices that violate the FLSA.").  Rather, the question "before the Court is not

whether Plaintiffs and other [superintendents] were identical in all respects, but 'rather whether

they were subjected to a common policy to deprive them of overtime pay when they worked

more than 40 hours per week.'"  *See Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL

260230, at *8 (S.D.N.Y. Jan. 27, 2012) (quoting *Vaughan v. Mortgage Source LLC*, No. 08 Civ.

4737, 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)); *see also id.* at *7 (noting evidence

submitted by both parties and concluding that "[t]he Court . . . declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation" (citations omitted)).

Accordingly, it is proper to certify a collective action for the superintendents.  It is not, however, proper to include the handymen in that collective action.  Even as described by Colon in his affidavit and by counsel to Colon in their filings, the superintendants and handymen are not similarly situated.  The jobs appear to involve markedly different pay scales, different hours and tasks, different overtime policies, and different compensation schemes.  These differences appear to be qualitative in nature, reaching the essentials of the job rather than the sorts of variations that bear on damages.  Thus, even at this stage, there is no basis for concluding that these two groups were subject to the same policy or that they share any sort of factual nexus.  This conclusion is bolstered by the near-total absence of evidence concerning the handymen: Colon's affidavit offers only a brief sketch and the other affidavits are silent.  Colon is free to assert claims arising from his tenure as a handyman in an individual manner, but those claims are not properly included in a collective action comprised of the superintendents.

### C.    Plaintiff's Proposed Notice

District courts have the authority to order that notice be circulated to potential members of a plaintiff class, pursuant to the opt-in provisions of the FLSA.  *Jacob*, 2012 WL 260230, at *9.  Defendants have raised several objections to Plaintiff's proposed notice.

First, the parties dispute the appropriate length of the notice period for the Notice of Pendency.  Although the FLSA contains a three-year statute of limitations, Plaintiff requests a six-year period based on his related N.Y. Labor Law claim for overtime pay, which has a six-year statute of limitations.  Courts have split regarding the merits of three-year versus six-year periods. *Compare McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y.

2011) (three year period) *with Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (six year period).  On the facts of this case and in light of its unique circumstances, the Court concludes that a three-year notice period is warranted.  *See Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012).

Second, to the extent that the proposed notice defines those eligible to join the class as anyone other than superintendants or individuals with the same or similar duties, the notice is overbroad and must be modified to account for the Court's certification ruling.

Finally, the Court agrees that it would be reasonable for the proposed notice to give potential plaintiffs 60 days to opt in, *see Enriquez v. Cherry Hill Mkt. Corp.*, No. 10 Civ. 5616, 2012 WL 440691, at *5 (E.D.N.Y. Feb. 10, 2012), that the notice may be translated into the mother tongue of non-English speaking groups of potential plaintiffs, *see Moung Su Kim v. Kap Sang Kim*, No. 10 Civ. 2515, 2010 WL 2854463, at *1 (E.D.N.Y. July 19, 2010), and that Defendants must disclose to Plaintiff in paper and electronic formats the names and last-known addresses of prospective plaintiffs who were employees during the three-year FLSA statute of limitations period, *see Alvarez*, 839 F. Supp. 2d at 588.

### D.      Equitable Tolling

Plaintiff requests that the Court toll the statute of limitations for all putative opt-in plaintiffs while this motion is pending.  That request is granted.  *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("[T]he statute of limitations will be tolled as of the date of the filing of this motion.").

### III.    Conclusion

For the foregoing reasons, Plaintiff's motion for conditional certification of a collective action under the FLSA is GRANTED IN PART and DENIED IN PART.  The parties are hereby

14

ordered to meet and confer, and to submit a revised Notice of Pendency within 20 days of the

issuance of this Order.  Defendants are hereby ordered to produce to Plaintiff a list of the names

and last-known addresses of the putative class members who were employed by Defendants from

May 11, 2009 to the present within 30 days of the issuance of this Order.

   The Clerk of Court is directed to terminate the motion at Dkt. No. 16.


SO ORDERED.


Dated: New York, New York
       July 2, 2013

                                        _____
                                                  J. PAUL OETKEN
                                           United States District Judge